IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEPHANIE OAKS,<br><br>                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISIONER'S FINAL DECISION**<br><br>Case No. 4:18-cv-00075-PK<br><br>Magistrate Judge Paul Kohler |

This Social Security disability appeal is before the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security.  Plaintiff Stephanie Oaks seeks review of the Administrative Law Judge's (ALJ) decision denying her claim for disability insurance benefits under Title II of the Social Security Act.  After review and oral argument, the Court affirms the Commissioner's final decision denying Ms. Oaks' claim for disability benefits.

## I.      BACKGROUND

Ms. Oaks was 27 years old in March 2014, when she claimed she became disabled due to schizoaffective disorder and bipolar disorder.  The record evidences several suicide attempts, reports of auditory hallucinations, and an inpatient psychiatric hospitalization.  A treating psychiatrist, Dr. Schaefer, opined that Ms. Oaks experienced severe limitations.  Testing by an examining psychologist, Dr. Staheli, revealed borderline to below-average abilities.  Another psychologist, Dr. Houston, reviewed the record at Ms. Oaks' attorney's request and opined that Ms. Oaks' mental impairments met the A, B, and C criteria for listing 12.03, which addresses schizophrenia spectrum and other psychotic disorders.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03.

But other evidence in the record paints a less dire picture of Ms. Oaks' limitations. When Ms. Oaks was compliant with her medication regimen, she appeared to do quite well. She had periods of normal mental status without any suicidal thoughts or psychotic symptoms, and her treating providers recorded significant improvement. She was able to go shopping, go to the DMV, and go on a family vacation to Disneyland.

A reviewing State agency psychologist, Dr. Tomori, indicated in a psychiatric review technique form (PRTF) that Ms. Oaks experienced mild-to-moderate impairment in the B criteria of listing 12.03. *See Social Security Ruling (SSR) 96-8p*, 1996 WL 374184, at *4 (explaining that the PRTF is used at steps two and three of the regulatory five-step sequential evaluation to assess a claimant's limitations and restrictions from mental impairments in categories identified in the B and C criteria of the mental impairment listings). Dr. Tomori opined that Ms. Oaks could sustain ordinary, routine tasks without special supervision; would have periodic difficulty carrying out detailed instructions; would likely have intermittent difficulty sustaining attention and concentration for extended periods and performing activities within a schedule; would have intermittent difficulty interacting with coworkers and supervisions; would fare best in a relatively isolated work environment with limited, non-problem-solving interaction with the public; and would fare best in a low-stress and well-structured work environment where minimal changes occur and a consistent routine is present.

The ALJ followed the Commissioner's five step sequential evaluation process for disability claims. See 20 C.F.R. § 404.1520(a)(4) (outlining the process). As relevant here, the ALJ found at step two that Ms. Oaks had "severe" impairments, including schizoaffective disorder and bipolar disorder. At step three, the ALJ found that Ms. Oaks did not have an impairment or combination of impairments that met a listing, including listing 12.03 for

schizophrenia and other psychotic disorders. Between steps three and four, the ALJ assessed Ms. Oaks' residual functional capacity (RFC), limiting her to understanding, remembering, and carrying out simple (but not complex) work; making decisions; attending and dealing appropriately with work peers, bosses, and occasional routine work changes; no work involving high production quotas or fast-paced activities; performing repetitive, routine work of a simple nature with few variables; and only incidental contact with the general public. At step five, the ALJ found that this RFC would allow Ms. Oaks to perform other work existing in significant numbers in the national economy. The ALJ thus concluded at step five that Ms. Oaks was not disabled.

## II.      ARGUMENTS ON APPEAL

On appeal, Ms. Oaks argues that the ALJ erred in his evaluation of the medical opinion evidence (namely the opinions of treating psychiatrist Dr. Schaeffer, examining psychologist Dr. Staheli, and reviewing psychologist Dr. Houston) and erred when he concluded that Ms. Oaks' schizophrenia did not meet listing 12.03.

## III.     STANDARD OF REVIEW

As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). The threshold for evidentiary sufficiency under the substantial evidence standard is "not high." *Biestek*, 139 S. Ct. at 1154. Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotations and citations omitted). Under this deferential standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See, Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). The Court's

inquiry, "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Biestek*, 139 S. Ct. at 1157. If the evidence is susceptible to multiple interpretations, the Court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation and citation omitted). That is, in reviewing under sentence four of 42 U.S.C. § 405(g), the Court must affirm if the ALJ's decision is supported by substantial evidence and the correct legal standards were used, even if the Court believes the evidence is "equivocal." *Nguyen v. Shalala*, 43 F.3d 1400, 1403 (10th Cir. 1994).

## IV.    DISCUSSION

The Court will briefly discuss the medical opinions and listing 12.03.

### A.  The medical opinions

As in many Social Security disability appeals, the ALJ here was presented with a number of disparate opinions relevant to Ms. Oaks' abilities and limitations. The ALJ as factfinder was tasked with resolving the conflicts between these opinions. *See, e.g.,* 20 C.F.R. § 404.1527; *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.") Social Security regulations lay out certain factors that an ALJ must consider when evaluating a medical opinion. *See* 20 C.F.R. § 404.1527(c). While an ALJ is required to consider these factors, he is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion," *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, an ALJ need only provide "good reasons in his decision for the weight he gave to the"

opinions. *Id.* (citing prior section 20 C.F.R. § 404.1527(d), which was later renumbered as § 404.1527(c) in 2012). The Court finds that the ALJ provided those requisite good reasons here.

The ALJ found that treating psychiatrist Dr. Schaefer's opinions were inconsistent with his own treatment notes, which demonstrated Ms. Oaks' significant improvement with treatment. The ALJ cited specific evidence of improvement, including Ms. Oaks' report that medication was helping her to feel better, Ms. Oaks' mother's agreement that she seemed improved, Ms. Oaks' report that she was sleeping well, and Ms. Oaks' report that she felt better than she had in a long time. The ALJ also found that Dr. Schaefer's opinions were inconsistent with Ms. Oaks' daily activities, including her ability to go on a family vacation to Disneyland, watch movies, craft, and go out on drives with her sister. The ALJ likewise noted the inconsistency between Dr. Schaefer's extremely limiting opinions and Ms. Oaks' report that her confidence and happiness were at a level of 10 out of 10. Finally, the ALJ noted that Dr. Schaefer's opinions were undercut by Ms. Oaks' reported symptoms being inconsistent with other evidence.

Turning to examining psychologist Dr. Staheli, there is some dispute between the parties whether the Summary and Recommendations section of his report was a medical opinion relevant to Ms. Oaks' workplace limitations. The Court finds that the ALJ considered Dr. Staheli's recommendations as an opinion, gave this opinion some weight, and permissibly translated its rather vague limitations into concrete vocational limitations, as was permissible. *See Hottman v. Berryhill*, No. 3:16-CV-02142-AA, 2017 WL 4682394, at *4 (D. Or. Oct. 17, 2017) (unpublished) ("The ALJ was not required to consider recommendations about future vocational training. Even assuming that there was such a requirement, the ALJ did not reject any portion of Dr. LeBray's opinion but reasonably translated the assessed limitations to concrete workplace limitations in the RFC."). The ALJ reasonably found that the opinion "suggests [Ms.

Oaks] can internalize and understand information that is not complex, but rather, can internalize information commensurate with unskilled, simple, routine and repetitive tasks."  While there may be other ways to "translate" Dr. Staheli's opinion, "[the Court's] deferential standard of review precludes [it] from labeling findings as inconsistent if they can be harmonized." *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018).

Next, the Court concludes that the ALJ permissibly discounted reviewing psychologist Dr. Houston's opinion because it was "based largely on subjective reporting made by [Ms. Oaks] and her mother to treatment providers" and it "does not adequately take into account the evidence of stabilization with medication and therapy compliance."  As the ALJ found, Dr. Houston's opinion was premised on his review of treatment records that largely recounted Ms. Oaks and her mother's statements to her providers.  Also, as the ALJ noted, Dr. Houston found that Ms. Oaks' "psychosis is her 'greatest disability,'" yet when Ms. Oaks was medication-compliant, she reported that she had no psychosis.

### B.    Listing 12.03

The listings found at 20 C.F.R. Part 404, Subpart P, Appendix 1, describe impairments that the agency considers severe enough to prevent an individual from doing any gainful activity. 20 C.F.R. § 404.1525(a).  Ms. Oaks bore the burden at step three of demonstrating that her impairments met a listing.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). This was a high burden.  "The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'"  *Sullivan v. Zebley*, 493 U.S. 521, 532-33 (1990) (citation omitted).  "For a claimant to show that [her] impairment

matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severe, does not qualify." *Id*. at 530 (emphasis omitted).

The ALJ here explained why he concluded that Ms. Oaks did not meet any listing, including listing 12.03. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03. The ALJ made findings relevant to this conclusion at both step three and within the RFC assessment. *See Fischer-Ross*, 431 F.3d at 733 ("[A]n ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."). The ALJ thoroughly explained why he found that Ms. Oaks experienced no more than "moderate" limitations in the B criteria, not the "marked" or "extreme" limitations required to meet listing 12.03B. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03B. Ms. Oaks argues that the ALJ did not give good reasons for finding that she did not experience marked or extreme limitations in interacting with others, but the evidence she cites is neither uncontroverted nor significantly probative, as those incidents arose when she stopped taking her anti psychotic medications and decompensated.

The ALJ also explained why he found that Ms. Oaks did not meet the C criteria for listing 12.03. *See id*. § 12.03C. Although Ms. Oaks lived at home and claimed she rarely left the house, she was able to drive with her sister, go on a family vacation to Disneyland, go Christmas shopping, visit friends, go to Walmart, and go to the DMV. And while Ms. Oaks appeared to decompensate several times, each incident was the result of ceasing (or significantly reducing) her anti psychotic medication.

## V.     CONCLUSION

The Court recognizes that the record contains conflicting evidence regarding her functional limitations.  Such is often the case.  In such circumstances, the Tenth Circuit has repeatedly advised district courts to defer to the institutional judgment of the agency factfinder—the ALJ.  *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("In short, the record contains support for both the notion that Mr. Allman has extreme deficiencies in concentration, persistence, and pace, and the notion that his mental limitations are not that severe.  The ALJ was entitled to resolve such evidentiary conflicts and did so." (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that the ALJ is entitled to resolve any conflicts in the record)); *see also Chismarich*, 888 F.3d at 980 ("In conducting [its] limited and deferential review of the final agency determination under the substantial-evidence standard, [a court] must view the record in the light most favorable to that determination . . . [and] must strive to harmonize statements where possible; [it] may neither pick nits nor accept an appellant's invitation to rely upon perceived inconsistencies.").  Given the equivocal nature of the evidence in this case, and the deferential standard of review, the Court affirms the ALJ's conclusion that Ms. Oaks was not disabled.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that the Commissioner's decision in the case is AFFIRMED.

Signed August 29, 2019.

BY THE COURT:

_____
Paul Kohler
United States Magistrate Judge